*838 OPINION OF THE COURT
John M. Curran, J.
Defendants have moved for an order pursuant to CPLR 3126 to strike the complaint and dismiss all causes of action against defendants with prejudice based on alleged discovery abuses and violations of discovery orders. Alternatively, defendants request various forms of relief as described in paragraph 62 of the affirmation of Vivian Quinn.
The discovery devices which are the subject of this motion are: (1) defendants’ initial set of joint document requests, served September 2, 2008 (document requests); and (2) defendants’ initial set of joint interrogatories, served October 13, 2008 (interrogatories). Defendants point to three previous orders, dated December 10, 2008, February 2, 2009 and May 11, 2009, addressing at least in part plaintiffs obligation to respond to these discovery devices. The latter order, known as “Case Management Order No. 4” (CMO 4) provides (If 2) in pertinent part:
“a. On or before August 31, 2009, plaintiff shall furnish all documents and any responses containing objections which are responsive to Defendants’ Initial Set of Joint Document Requests to Plaintiff, served September 2, 2008, and in response to document production demands served by any individual defendants with a service date of on or before February 5, 2009.
“b. On or before August 31, 2009, plaintiff shall serve complete answers and/or objections in response to Defendants’ Joint Set of Interrogatories, served on October 13, 2008; complete responses and/or objections in response to Defendants’ Joint Omnibus Demands, served October 13, 2008; and complete answers and/or objections in response to interrogatories served by any individual defendants with a service date of on or before February 5, 2009;
“c. In the event plaintiff fails to comply with paragraphs 2 (a) and/or 2 (b) above, plaintiff shall be precluded from introducing into evidence at trial any documents not so provided and from introducing evidence at trial pertaining to any issue to which such interrogatories and Joint Omnibus Demands relate.”
Paragraph 2 (c) above was agreed to by plaintiff in exchange for a significant but definitive extension of time in which to re *839 spond to the aforesaid discovery devices as set forth in paragraph 2 (a) and (b) above. The parties agree that “all documents and any responses containing objections” to the document requests were not furnished by August 31, 2009. Similarly, the parties agree that “complete answers and/or objections in response” to the interrogatories were not served by August 31, 2009.
Plaintiff produced four documents on September 16, 2009, which was deemed timely by the court on a nunc pro tunc basis (order granted Nov. 24, 2009). Plaintiff continued to produce documents on October 29, 2009, November 20, 2009, and November 30, 2009, albeit with defendants’ understanding that preclusion had already occurred and that plaintiff was thereby honoring its continuing duty to produce documents responsive to the request. Plaintiff also served answers and/or objections to the interrogatories on September 1, 2009, but many of the interrogatories were left unanswered and/or unverified.
In accordance with CMO 4, plaintiff identified three witnesses with the broadest knowledge of certain “Areas of Inquiry” set forth by the defendants. Those witnesses were deposed in November and December of 2009. One of the witnesses, Mr. Paulson, was identified by plaintiff as the individual who “interfaced with other County employees to identify electronic and hard copy documents and other information responsive to Defendants’ discovery demands” (affirmation of Vivian Quinn, dated Jan. 26, 2010, exhibit I). The other two witnesses are former officers of the plaintiff.
Mr. Paulson testified that he was not made aware of the document requests until “late 2008,” the first time he learned of this litigation. Mr. Paulson also testified that he was unaware of any efforts by plaintiff to preserve documents in connection with this litigation until that time. At most, according to Mr. Paulson, plaintiff retained documents only pursuant to certain general state regulations which are not specific to this litigation. In addition, Mr. Paulson described certain ad hoc efforts he undertook to retrieve and preserve electronic and other records. The two former officers who were deposed testified that they were never asked to preserve or retain any documents while employed by the plaintiff.
Defendants argue that plaintiffs failure to preserve and produce documents in response to the document requests warrants the strongest possible sanction, i.e., dismissal of the action. Defendants acknowledge that, pursuant to the terms of CMO 4, *840 they have already been afforded the remedy of preclusion. Defendants assert, however, that preclusion alone is insufficient because the documents they seek are relevant to the defense of this action and plaintiff is therefore not disadvantaged by preclusion. In other words, preclusion is an insufficient remedy for the plaintiffs alleged failure to preserve and produce documents the defendants claim must have existed and which would be relevant to one or more defenses.
Paragraph 49 of the Quinn affirmation describes two categories of documents defendants assert must have existed and were destroyed by plaintiff and/or still exist and have not been produced despite demand. In general terms, these documents are described as “pharmaceutical purchasing records and New York State budget documents” (Quinn affirmation If 49). Both categories are relevant, according to defendants, because they attempt to show in varying ways that plaintiff was aware at some level that average wholesale price* (AWP) was an inflated price. On this basis, defendants purport to argue that plaintiff cannot establish reliance on defendants’ purportedly false representations regarding AWP and/or that any damages allegedly suffered by plaintiff are not causally related to such false claims. At oral argument, defendants conceded that the purchasing records would relate to but a small percentage of the pharmaceuticals at issue in the case, but claimed that the documents were important, not to demonstrate the quantity of the pharmaceuticals involved, but to establish plaintiffs awareness of AWP as an inflated price.
Plaintiff opposes the motion by broadly arguing that the requested documents have never been in any of its files as revealed by its recent search of its records to no avail. Plaintiff also asserts that it never expected to find any of the requested documents because those documents do not relate to plaintiffs limited role in the Medicaid reimbursement process which is the subject of this action. Further, plaintiff alleges that any such documents are irrelevant to its cause of action under the Social Services Law because plaintiffs knowledge of and reliance on defendants’ false claims regarding AWP are not an element of that statutory cause of action.
With respect to the purchasing records sought by the defendants, plaintiffs argument that it never possessed such docu *841 ments is without merit because at least one such document has been produced (Quinn affirmation, exhibit Z) and because plaintiff indisputably purchased pharmaceuticals for its own account and records thereof must have been made at some point (see e.g. Quinn affirmation, exhibit AA). Plaintiffs assertion at oral argument that these pharmaceuticals were purchased on a “state bid” is unsupported by the record. Moreover, even if such pharmaceuticals were purchased on a “state bid” and, as argued by plaintiff, were not part of the Medicaid process underlying plaintiffs claims, that fact would not make these documents irrelevant to the defense (i.e., to establish knowledge of AWP inflation and thereby negate reliance/causation). While this defense may not be defendants’ primary argument, the court at this juncture cannot declare that the purported defense is without merit and should not be explored in discovery.
With respect to the state budget documents, plaintiffs argument that, while the documents were in its possession at some point, it need not have preserved or produced them because they are publicly available, misses the mark entirely. The point of the documents from the defendants’ perspective is that they establish awareness by plaintiff that AWP was inflated in order to expand the number of pharmacies participating in the Medicaid reimbursement system. Because the documents have been discarded, defendants are deprived of the ability to argue that specific documents showing this information were in the possession of and presumably reviewed by plaintiffs key employees.
The fundamental problem with plaintiffs position on this motion is that it cannot be verified by any credible action it undertook to preserve potentially relevant documents. Because plaintiff made no discernable effort between commencement of this lawsuit and approximately 3V2 years later in 2008 to ensure that plaintiffs employees were preserving documents that were potentially relevant to this action, the defendants are unable to verify that what plaintiff now says is true, i.e., that the requested documents have never been in plaintiffs possession. Plaintiffs failure to place any sort of “litigation hold” on the routine destruction of documents which would be potentially relevant to this lawsuit is “grossly negligent” (Chan v Triple 8 Palace, Inc., 2005 WL 1925579, *7, 2005 US Dist LEXIS 16520, *19 [SD NY 2005]; Pension Comm. of Univ. of Montreal Pension Plan v Banc of Am. Secs., LLC, 685 F Supp 2d 456, 465 [SD NY 2010]; Treppel v Biovail Corp., 249 FRD 111, 121 [SD NY 2008]; *842 Einstein v 357 LLC, 2009 NY Slip Op 32784[U], *22 [Sup Ct, NY County 2009]).
This is not to say that the court concludes that the two primary categories of documents sought by defendants were in fact ever in plaintiffs possession and/or highly significant. The court is unable to make these findings on this record and any such findings should in any event be left to the trier of fact. Still, the failure by plaintiff to take affirmative steps before 2008 to preserve documents for production in this action warrants an appropriate sanction. Any such sanction must be balanced by plaintiffs arguments that the documents sought by the defendants are not of the type it expected to have in its possession and that the documents are not central to this litigation. Accordingly, the court will grant the defendants’ motion but only to the extent of affording the defendants an adverse inference charge at trial, the structure and terms of which should be designed after evidence on the issue is introduced before the trier of fact (Koehler v Midtown Athletic Club, LLP, 55 AD3d 1444, 1445 [4th Dept 2008]; Barone v City of New York, 52 AD3d 630 [2d Dept 2008]; Campbell v Tracey Rd. Equip., 288 AD2d 954 [4th Dept 2001]). The exact phraseology of the charge should await the trial and of course be shaped by the proof (see e.g. Walczak v Cortos Bros., II, Inc., 13 Misc 3d 1241[A], 2006 NY Slip Op 52204[U] [Sup Ct, Erie County 2006], affd 45 AD3d 1360 [4th Dept 2007]), although Judge Scheindlin has devised an excellent model in her recent decision (Pension Comm. of Univ. of Montreal Pension Plan at 487-488).
In addition, this court finds that plaintiffs failure to interpose any “litigation hold” on the routine destruction of documents potentially relevant to the lawsuit, and plaintiffs failure to establish a coordinated plan for the retrieval and production of such documents, is so grossly negligent as to warrant a monetary sanction as well. Defendants are therefore awarded the reasonable fees and costs of making this motion. Defendants shall file papers setting forth the particulars of their fee requests for making this motion on or before August 15, 2010. Plaintiff may submit papers in opposition to the amounts sought on or before August 31, 2010.
With respect to the interrogatories, plaintiff is afforded 30 days from the date of this decision to provide verification pages for all of its interrogatory answers served to date. In the event that such verification pages are not provided, defendants may seek by motion practice further relief concerning the interroga *843 tories by specifically identifying what relief defendants seek as to each unanswered or unverified interrogatory. Furthermore, any objections served with respect to the interrogatories which were served after August 31, 2009 are deemed to have been waived by the untimely assertion of such objections.
Defendants’ counsel is to prepare and settle the order with plaintiffs counsel.

 Average wholesale price is the price plaintiff alleges was fraudulently and falsely inflated by defendants for their pecuniary gain.